UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

TERRELL THOMAS,

            Plaintiff,

  -v-                                                            No. 14 CV 4459-LTS

ARIEL WEST, HUDSON ISLAND, LLC, and
URBAN OUTFITTERS, INC.,

            Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Terrell Thomas ("Plaintiff") brought this action against defendants Ariel West, Hudson Island, LLC ("Hudson Island"), and Urban Outfitters, Inc. ("Urban," and collectively, "Defendants"), asserting claims of disability discrimination under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 et seq., New York State Executive Law § 296, New York State Civil Rights Law § 40, and section 8-107 of the Administrative Code of the City of New York, as well as a claim of common-law negligence. Plaintiff's claims concern the accessibility of certain areas and features of an Urban Outfitters store in New York, New York to persons using wheelchairs. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction of Thomas's related city and state anti-discrimination law claims pursuant to 28 U.S.C. § 1367(a).

        Defendants moved to dismiss Plaintiff's complaint or, in the alternative, for summary judgment. (Docket Entry Nos. 109 and 114.) By Memorandum Opinion and Order dated March 15, 2017, the Court dismissed certain of Plaintiff's claims as moot and denied Defendants' alternative motion for summary judgment as to Plaintiff's ADA, and city and state

anti-discrimination law claims relating to dressing rooms located on a mezzanine area of the store (the "Mezzanine") and the use of a landing on the staircase between the cellar and the street-level floor (the "Landing") where merchandise was located for sale. Thomas v. West, 242 F. Supp. 3d 293 (S.D.N.Y. 2017) (the "Opinion"). Finding that the record might support summary judgment in favor of Plaintiff on the Mezzanine and Landing claims, the Court ordered Defendants to show cause as to why summary judgment should not be granted against them to that extent. (Docket Entry No. 134.)

The parties attempted to settle and then briefed the issues raised in the order to show cause. After considering the submissions of both parties carefully, the Court now grants summary judgment to Plaintiff on his ADA, and state and city anti-discrimination law, claims regarding the Landing and Mezzanine.

BACKGROUND

Familiarity with the underlying facts of this case, as summarized in the Opinion, are presumed. The following background summary focuses on facts, which are undisputed unless otherwise indicated, that are pertinent to the question of whether Plaintiff is entitled to summary judgment with respect to the Mezzanine and Landing.

The subject Urban Outfitters retail clothing store ("Store 143") consists of a cellar ("Story 1"), a street-level floor ("Story 2"), and a Mezzanine above Story 2. (Def.'s 56.1 St. ¶¶ 4, 12.) At the time when the Court entered the Opinion, the Mezzanine contained fifteen fitting rooms, which were staffed by an Urban employee and accessible only by stairs, in addition to two fitting rooms on Story 2. (Pl.'s 56.1(b) St. ¶¶ 22-24.) No elevator or lift connects the

Mezzanine to either Story 1 or Story 2; a wheelchair user such as Plaintiff cannot independently gain access to the Mezzanine level. (Id. ¶¶ 22-23.)

Store 143 features a 500-square foot Landing level on the staircase connecting Stories 1 and 2. (Id. ¶ 27; Defs.' 56.1 ¶ 8.) "At all times since Store #143 has been open for business [through the date the Opinion was entered], the Landing . . . contained merchandise for sale to Urban's customers." Opinion, 242 F. Supp. 3d at 296. No elevator or lift connects the Landing to either Story 1 or Story 2, and the Landing therefore is not accessible to a wheelchair user. (Pl. 56.1(b) St. ¶¶ 32-33.)

By May 20, 2015, while the initial dispositive motion practice was pending, Defendants remediated several other alleged barriers that had been identified in the complaint; the Court later dismissed the claims as to these barriers as moot and also dismissed Plaintiff's claims based on common-law negligence. Opinion, 242 F. Supp. 3d at 305; (Decl. of Dan Busch, Docket Entry No 67, ¶¶ 13-15). According to Dan Busch, the executive director of Urban, Defendants also "removed all merchandise for sale from the Landing and utilized the [L]anding for display elements only, and ensured that any product displayed on the [L]anding is also offered in other ADA accessible areas of the store" at that time as part of the broader remediation strategy. (Busch Decl. ¶ 14.) Busch pledged to "remain vigilant to repair any issues that may develop in the future." (Id.¶ 25.) However, the store manager, Josh Reyes, testified on September 30, 2015, that the Landing was still being used to sell merchandise, provided that the same merchandise was also for sale elsewhere in the store. (Reyes Tr., Docket Entry No. 121-6,

at 54-55 ("We sell things on [the Landing]. We just always have to make sure it's double represented on the [L]anding and on the lower level.").)

The Court entered its Opinion on March 15, 2017, concluding that the Mezzanine and Landing were primary function areas of a clothing store, featuring fitting rooms and merchandise display respectively, and were inaccessible in violation of the ADA. Specifically, the Court found unpersuasive Defendants' argument that they were in compliance with the ADA through the Equivalent Facilitation Rule, Section 2.2 of the 1991 Standards for Accessible Design ("1991 Standards"), because the items for sale on the Landing were also offered for sale in other, accessible, areas of the store and two accessible fitting rooms were located on Story 2. Opinion, F. Supp. 3d at 301-304. The Court also determined that the fitting area on the Mezzanine did not meet the requirements of the 1991 Standards that each "cluster" of fitting rooms include a certain number of accessible fitting rooms <u>and</u> be located on an accessible route. <u>Id.</u>

Following the issuance of the Opinion and the order to show cause, Defendants made further changes in an attempt to remediate the ADA violations alleged with respect to the Mezzanine and the Landing. In a declaration dated July 2, 2017, Jenneth Lee, the "Store Brand Leader" for the subject Urban Outfitters location[1] since December 2015, represented that, while merchandise for sale had been displayed on the Landing during her tenure (noting that "[a]ll merchandise on the Landing was always equally available on the lower floor"), she had been notified verbally "[i]n or about the first quarter of 2017" that "Urban wanted to ensure that no merchandise for sale would be kept on the Landing" and that the Landing was only to be used for "decorative display, to showcase certain items for sale elsewhere in the store" in the manner of a

---

[1] According to Lee, "'Store Brand Leader' is Urban's current terminology for store manager." (Lee Decl., docket entry no. 143, at ¶ 3.)

store window.  (Lee Decl., Docket Entry No. 143, ¶¶ 2, 5, 6.)  Customers were not to be able to take merchandise from the Landing for purchase.  (Lee Decl. ¶ 6.)  Lee further represented that she was told that graphic displays were supplied for the Landing, and that she had all merchandise and equipment for handling sale merchandise removed from the landing.  She asserted that the Landing "is only being used for visual displays of items for sale elsewhere in the Store" and that she intended to "remain vigilant in this regard."  Id.  She was provided with a written memorandum from Busch, "reinforcing Urban's policy with respect to the Landing," on June 29, 2017.  (Id. at ¶ 7.)

Lee further represented that, when she first began working at the store, the Mezzanine dressing room area was used only "when it was needed for overflow," and that, "[m]ost of the time," the Mezzanine was "roped off."  (Id. at ¶9.)[2]  In late spring 2017, according to Lee, she "was informed that Urban had decided to close the Mezzanine to customers and reconfigure it for non-publicly accessible storage."  (Id. at ¶10.)  Lee proffered that, between June and July 2017, five new fitting rooms were built on the cellar level (Story 1) and on the Mezzanine level "Urban removed or changed certain of the former fitting room doors, removed all internal furniture items, removed most of the internal hardware, and broke down or moved some of the walls, to make it a better space for storage."  (Id. at ¶11.)  Lee represented that "[t]he Mezzanine is no longer usable as fitting rooms, and in practice it is being used only for non public storage."  (Id. at ¶12.)

---

[2]  Plaintiff points out that, at his September 30, 2015, deposition, the former store manager testified that store personnel had been assigned to the Mezzanine dressing area at all times when the store was open.  (See Docket Entry 121-6 at 41.)

DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. See Anderson, 477 U.S. at 248. In making its determination, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. See id. at 255.

Defendants argue that, since the Court entered the Opinion, they have voluntarily undertaken further modifications to Store #143 to bring it into compliance with the ADA with respect to the remaining accessibility barriers alleged by Plaintiff, thus rendering this case moot. Specifically, they believe, and Plaintiff does not dispute, that moving the fitting rooms from the Mezzanine to the cellar and removing merchandise for sale from the Landing means that those areas are no longer primary function areas which require access under the ADA. See Opinion, 242 F. Supp. 3d at 300. In the alternative, Defendants assert that there are triable issues of fact as to whether limiting the Landing display of merchandise for sale to such merchandise that was available elsewhere in the store, and whether the provision of ADA-accessible fitting rooms on

Story 2 while using the Mezzanine fitting room area only for overflow, were sufficient under the Equivalent Facilitation Rule to render Store # 143 ADA-compliant.

Mootness

The mootness doctrine is derived from Article III of the Constitution, which gives the federal judiciary authority to adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2. "A case becomes moot—and therefore is no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)) (internal quotation marks omitted).

"The 'voluntary cessation' exception to the mootness doctrine recognizes, however, that 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" Gropper v. Fine Arts Hous., Inc., 12 F. Supp. 3d 664, 669 (S.D.N.Y. 2014) (quoting Already, LLC, 133 S. Ct. at 727). Voluntary removal of a barrier moots a Title III claim only "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94, 110 (2d Cir. 2010) (quoting Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996)). A defendant may only meet this heavy burden if the voluntary changes have completely remedied the complained of condition and "it is absolutely clear the defendant cannot resume the allegedly offending conduct." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000)) (internal quotation marks and citations omitted); see also

Maziarz v. Hous. Auth., 281 F.R.D. 71, 79 (D. Conn. 2012) ("Voluntary cessation may render a case moot, but only where the defendant meets the heavy burden.").

Generally, courts find that, once a defendant voluntarily makes remedial physical alterations to a building, the associated ADA claim is moot. See e.g. Gray v. Cty. of Kern, No. 14CV00204LJOJLT, 2015 WL 7352302, at *15 (E.D. Cal. Nov. 19, 2015), aff'd in part, rev'd in part and remanded on other grounds, 704 App'x 649 (9th Cir. 2017). Once a defendant embarks on construction to bring its building into compliance, it would be illogical to assume a defendant would expend further funds to reverse the remediation, remove itself from compliance with the ADA, and expose itself to further litigation if there "is no evidence that Defendant would derive any benefit from the reversion." Kohler v. In-N-Out Burgers, No. CV 12-5054-GHK JEMx, 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013).

Here, Defendant proffers that it has completed the construction of (some) replacement fitting rooms and ceased to use the Mezzanine as dressing rooms and repurposed that level into non-public storage, through modification of the fitting rooms, removal or relocation of some of the walls, removal of "most" of the internal hardware, and removal of the movable furniture. Some, but not all, of the fitting room space lost through this modification has been replaced by new fitting rooms on the cellar level. The new configuration reduces the overall number of fitting rooms from 17 to 7. Defendants' proffer, viewed in the light most favorable to them, is insufficient to meet their heavy burden of showing physical modifications that irrevocably eradicate the non-compliant use of the Mezzanine. The structural elements of the fitting rooms, with the exception of some walls, remain extant, and even some of the fitting room hardware remains intact. There was no proffer as to the cost of the modifications and, given the limited nature of the modifications and the fact that the store that had 17 dressing

rooms now has only 7, it would not be illogical to revert the Mezzanine to its prior use in absence of an injunction.  Cf. Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 452 (E.D.N.Y. 2015) (finding case moot where plaintiff proffered no reason why defendant would wish to physically change a remediated condition to move out of compliance with the ADA).  Accordingly, Plaintiff's ADA claims as to the Mezzanine are not moot.

Courts are even more skeptical as to whether remediations effectuated through policy, or prospective promises generally, are unlikely to recur, because a policy may be rescinded and a prohibited practice may be reinstituted on short notice.  See De La Rosa v. 600 Broadway Partners, LLC, 175 F. Supp. 3d 191, 202 (S.D.N.Y. 2016) (finding that policies governing the use of an elevator could be reversed the very next day).  Here, Defendants could readily resume re-selling merchandise on the Landing with minimal preparation.  Furthermore, Plaintiff has proffered evidence that, inadvertently or not, the employees of Store #143 violated Busch's previous directive to stop selling merchandise on the Landing, as evidenced by Reyes' testimony that merchandise was still being sold on the Landing as late as September 30, 2015.  This lapse is suggestive of a possible future recurrence.

Defendants contend that the changes to the Landing are primarily physical, such that the possibility of a recurrence is thus diminished.  See Bacon v. Walgreen Co., 91 F. Supp. 3d at 452.  While the removal of merchandise is arguably a physical change, it is better characterized as a policy change—merchandise may easily be moved and displayed for sale based only on the instructions of management, similar to the directives that resulted in the current removal of clothes from the landing.  Accordingly, Plaintiff's ADA claim regarding the Landing is not moot and the Court proceeds to the merits of Plaintiff's remaining claims.

Summary Judgment as to the Landing and Mezzanine Claims

Having concluded that Plaintiff's claims for accessibility violations related to the Landing and Mezzanine are not moot, the Court next turns to whether Plaintiff is entitled to summary judgment on those claims under the ADA and state and city anti-discrimination laws.[3] Here, Defendants simply contest the Court's holding in the Opinion that the Equal Facilitation Rule permits only deviations from technical standards, not the duplication of a building's primary function to provide segregated experiences for disabled customers, and argue that, under their interpretation of the Equivalent Facilitation Rule, there was no violation of the ADA because all customers, whether disabled or not, could use the accessible fitting rooms on the street level, rather than the Mezzanine, or purchase the merchandise located on the Landing in other locations throughout the store. See Opinion, 242 F. Supp. 3d at 301-304. Although it was possible for non-disabled customers to use such duplicate spaces, it remains the case that "Urban chose to undertake alterations to Store #143 that created new [primary function] spaces that

---

[3]     As the parties do not argue that Plaintiff's related state and city anti-discrimination law claims should be analyzed under standards that are different from the ADA, the Court focuses its analysis on the viability of Plaintiff's claims under Title III of the ADA. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law is governed by the same legal standards as govern federal ADA claims." (internal citation omitted)); see Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ("Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights [L]aw cannot fall." (quoting the Local Civil Rights Restoration Act of 2005 § 1, N.Y.C. Local Law No. 85 (2005))); see also Ross v. Royal Pizza Café Corp., No. 17 CV 6294 (FB) (RML), 2018 U.S. Dist. LEXIS 130211, at *11-12 (E.D.N.Y. Aug. 1, 2018) (finding lability under the New York City Human Rights Law based upon liability under the ADA's lower standard).

cannot be accessed by disabled customers like Plaintiff" and thus violated the ADA and city and state anti-discrimination statutes as a matter of law. [4] See id. at 304.

Defendants also contend that Plaintiff failed to meet the traditional equitable standards to qualify for a permanent injunction by demonstrating: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). Specifically, Defendants assert that Plaintiff has failed to demonstrate the likelihood that he will suffer an irreparable injury. The Court finds that Plaintiff has suffered irreparable harm owing to Defendants' past ADA violations, the recurrence of which is prevented only by a voluntary policy which may be readily rescinded or disregarded, as evidenced by Reyes's statement that Urban continued to sell merchandise on the Landing in 2015 despite corporate direction to the contrary, or by minor structural changes to the Mezzanine, which Defendants may be incentivized to revert to its previous configuration. See De La Rosa, 175 F. Supp. at 202 (observing that a policy change may be quickly reversed). This prospect of recurring irreparable harm, when coupled with the unavailability of an alternative remedy at law for the ADA violation and the absence of harm to the public interest or hardship to Defendants resulting from an order merely compelling continued adherence to an established policy that effects ADA

---

[4] Summary judgment is further warranted because the fitting area on the Mezzanine did not meet the requirements of the 1991 Standards that within each "cluster" of fitting rooms at least five percent, but no less than one, of the fitting rooms must be accessible and be located on an accessible route. Opinion, 242 F. Supp. 3d at 303.

compliance, warrants the award of injunctive relief.[5]  Denial of an injunction in these circumstances would also undermine the principle that a defendant may not render a claim moot by voluntary cessation of offending behavior without meeting its heavy burden of demonstrating that it is "it is absolutely clear the defendant cannot resume the allegedly offending conduct." Clear Channel Outdoor, 594 F.3d at 110 (internal quotation marks and citation omitted).

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on his ADA and city and state anti-discrimination law claims seeking injunctive relief with respect to the Landing and Mezzanine.  Any determination of damages pursuant to the city and state anti-discrimination law claims must be addressed at trial.

CONCLUSION

For the foregoing reasons, the Court grants summary judgment in Plaintiff's favor with respect to liability and injunctive relief on his ADA and state and city anti-discrimination law claims with respect to the Landing and the Mezzanine.  Defendants are hereby permanently enjoined from utilizing the Landing and the Mezzanine for primary store functions such as the offering of merchandise for sale and fitting rooms until those areas are brought into compliance with the applicable ADA accessibility standards.  See Opinion, 242 F. Supp. 3d at 299-304. Plaintiff's claims for state and local law damages will be determined at trial, unless resolved

---

[5]  Concluding that Plaintiff has satisfied the traditional factors for the award of a permanent injunction, the Court declines to address Plaintiff's argument that he need not demonstrate a likelihood of irreparable harm to obtain a permanent injunction explicitly authorized by statute.  See Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175 (9th Cir. 2010) (observing, in apparent dicta, that when an injunction under the ADA is the only remedy available, "it would be an abuse of discretion for the district court now to deny injunctive relief").

consensually, and Plaintiff may make an application for attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d).

The final pretrial conference in this case is scheduled for **October 12, 2018** at **2:00 p.m.** The parties must meet promptly with Magistrate Judge Freeman to discuss settlement, and must confer and make submissions in advance of the final pretrial conference as provided in the Pre-Trial Scheduling Order (Docket Entry No. 29.)

SO ORDERED.

Dated: New York, New York
August 8, 2018

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge